## STATE OF CONNECTICUT *v.* EXEL RIVERA
### (AC 19826)

Foti, Mihalakos and Daly, Js.

Argued February 28—officially released May 8, 2001

*Felix Esposito*, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Exel Rivera, appeals from the judgments rendered after a jury trial of guilty of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[1] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] The defendant claims that (1) the trial court improperly granted the state's motion to consolidate the two cases against him and (2) the prosecutor, during summation, engaged in misconduct. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The defendant was arrested on February 2, 1997, and charged with numerous offenses that arose from his sexual assault of four separate victims. Prior to trial, the court granted the defendant's motion to dismiss the charges in one case after the state had revealed that

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

General Statutes § 53a-65 (8) provides: " 'Intimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts."

the complaining witness was unavailable to testify. On October 6, 1998, the court granted the state's motion to consolidate the three remaining cases. On October 13, 1998, after a jury was selected, the state indicated that it was unable to produce another one of the complaining witnesses. That case, which was dependent on the witness' complaint, was nolled. After a new jury was empaneled, the defendant was tried pursuant to an amended information from the two remaining cases.

The trial concerned the following facts. The first victim, E, lived with the defendant from April through August, 1996. E was fifteen years old at that time. In late June, 1996, the defendant, the defendant's brother and E went to Seaside Park. While they were at the park, the defendant supplied E with alcohol. E and the defendant returned to the defendant's residence after midnight. The defendant then suggested that he and E clean the basement. Once they were in the basement, the defendant told E to take his pants off and to lie down on the floor. E complied, out of fear, and the defendant sodomized him.

In early August, 1996, E and the defendant once again consumed alcohol together. When E saw that the defendant intended to sodomize him again, E told the defendant that he did not want to do it because he was not gay. The defendant replied, "Well, I'll just rape you." After the defendant had begun sodomizing him, E told the defendant to stop and to get off of him. The defendant replied that he would keep doing it until E cried. After the defendant was through, E went to the bathroom and saw that he was bleeding. E moved out of the defendant's house later that same summer.

E reported the assaults in January, 1997. He claimed that he had waited to report them because (1) he was frightened of the defendant, who told him that he had hurt people before, (2) he did not want to believe that

the assaults had actually happened and (3) he feared that others might think that he was gay or blame him for what had happened.

The second victim, M, who was thirteen years old at the time, visited the defendant's home alone on January 3, 1997. M began playing with a nine year old and a five year old child in a bedroom. The defendant entered the bedroom and, after telling the nine year old and five year old to leave the room, locked the door. The defendant then took his pants off and removed M's clothes. While holding M's hands, the defendant vaginally raped her. When he was done, the defendant left the bedroom. M locked the door in order to clothe herself. When she was dressed, M unlocked the door, and the nine year old and five year old reentered and resumed play. Because no one could drive her home that evening, M was forced to spend the night in the defendant's home.

The defendant was found guilty of all charges, and, on January 22, 1999, the court sentenced him to a total effective sentence of twenty years, execution suspended after fifteen years, with twenty-five years probation.

I

The defendant first claims that the court improperly granted the state's motion to consolidate the cases. We disagree.

"We recognize that an improper joinder may expose a defendant to potential prejudice for three reasons. First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inad-

missible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . . Nevertheless, because joinder .foster[s] economy and expedition of judicial administration . . . we consistently have recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion, we will not second guess the considered judgment of the trial court as to joinder or severance of two or more charges.

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Lewis*, 60 Conn. App. 219, 226–27, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000).

While both of the cases against the defendant involved sexual assaults of children, they are clearly discrete and easily distinguishable on their facts. The first victim, E, a fifteen year old boy who lived in the defendant's home, was sodomized by the defendant. The

second victim, M, was a thirteen year girl who visited the defendant's home and was playing with other children in one of the bedrooms before the defendant vaginally raped her. We find these crimes to be easily distinguishable on the facts. The victims and the nature of their assaults are completely divergent, and can easily be kept separate in the minds of jurors, not least because of their opposite gender.

We do not want to minimize the violent nature of the crime of sexual assault. On the basis of our review of the second factor set forth in *Lewis*, actual, physical violence must be involved in the commission of the charged crime to meet the standard. The defendant did not use physical force or violence to effectuate his assaults on the victims. He did not have to, as they were children who viewed him as an authority figure.

"We are aware that the duration and complexity of a consolidated trial may enhance the likelihood that [the] jury may weigh the evidence against the defendant cumulatively, rather than independently in each case. . . . The circumstances of each case must be considered where consolidation is claimed to result in a substantial prejudice." (Citations omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 29, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997). We cannot say, however, that the cases against the defendant were particularly complex. While the defendant's trial lasted twelve days, a total of only seventeen witnesses were called to testify. See *State* v. *Delgado*, 243 Conn. 523, 536, 707 A.2d 1 (1998) (trial that lasted eleven days and involved testimony of twenty-five witnesses found not to be unusually lengthy or complex); *State* v. *Herring*, 210 Conn. 78, 97, 554 A.2d 686 (neither duration of trial nor its complexity created sufficient risk of jury confusion so as to require severance when trial lasted eight days and involved testimony from twenty-three witnesses), cert. denied, 492 U.S. 912, 109 S. Ct. 3230,

106 L. Ed. 2d 579 (1989). Compare *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987) (consolidated trial of four cases lasting ten weeks and involving the testimony of fifty-five witnesses found to create high risk of prejudice). Here, the state called nine witnesses over the course of six days and presented its case in an orderly and logical fashion. See *State* v. *Lewis*, supra, 60 Conn. App. 231. We cannot conclude that the defendant's trial was either unusually lengthy or particularly complex. Therefore, a high risk of prejudice was not created by the trial court's joinder of the cases. Because none of the three *Lewis* factors was present, the joinder was proper.

## II

The defendant next claims that the prosecutor engaged in misconduct at trial by making statements that infringed on his constitutional rights (1) to testify on his own behalf, (2) to present a defense, (3) to due process and (4) to a fair trial. We disagree.

The defendant specifically claims that during summation the prosecutor stated that defense counsel "tells you or the defense tells you that we do not have to prove anything, but they did put evidence on and you have to consider that they shouldn't be given any benefit because they decided to put a case on or that the defendant decided to take the stand. He's not given a benefit for that." The prosecutor also described the assault of M by stating that the defendant "goes into the room, removes her pants, removes her panties and removes his pants, and put his penis inside of her—that's her testimony—and had stayed there for a period of time with her. He wasn't inside of her for a long period of time. As she testified, he came out of her, got himself back together again and then left the room." It is the defendant's assertion that this statement amounted to a misrepresentation of M's testimony. The defendant

claims that these statements effectively infringed on his constitutional rights to due process, to a fair trial, to testify on his own behalf and to put forth a defense.

Because this claim was not preserved at trial, we must subject it to the four-pronged test set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] The first two prongs of *Golding* are satisfied because the record is adequate for review and the claim is of constitutional magnitude. The defendant's claim, however, fails the third prong because the alleged constitutional violations do not clearly exist and the defendant was not clearly deprived of a fair trial.

"When presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates. [A] prosecutor is not an ordinary advocate. His [or her] duty is to see that justice is done *and to refrain from improper methods calculated to* produce prejudice and wrongful decisions by the jury. . . . [B]y reason of his [or her] office, [a prosecutor] usually exercises great influence upon jurors. His [or her] conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because [a prosecutor] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment." (Internal quotation marks omitted.) *State* v.

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

*Rivera*, 61 Conn. App. 763, 769, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001).

"Prosecutorial misconduct can occur in the course of closing argument. . . . Counsel, in addressing the jury, must be allowed a generous latitude in argument, including the zeal of counsel in the heat of argument. . . . Ultimately, the proper scope of closing argument lies within the sound discretion of the trial court. . . . We review the allegedly improper comments in the context of the entire trial." (Citations omitted.) *State* v. *Beall*, 61 Conn. App. 430, 443, 769 A.2d 708, cert. denied, 255 Conn. 954, 772 A.2d 152 (2001). "The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Rivera*, supra, 61 Conn. App. 769.

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. . . . The trial court's ruling is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful. . . . [T]he trial court's determination that the prosecutor's remarks did not require a new trial must be afforded great weight." (Internal quotation marks omitted.) Id., 770.

"The failure to object to certain arguments at trial often is an indication that counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized." (Internal quotation marks omitted.) Id., 777.

The defendant has failed to prove that the challenged statements were so egregious as to prejudice the whole of the trial. The facts that the court, on its own, did

not act to rectify the prosecutor's statements and that the defendant did not object at trial to any of the statements that he now challenges support the conclusion that he was not prejudiced.

The judgments are affirmed.

In this opinion the other judges concurred.