## State of Connecticut *v.* Monica Golding
## (13508)

Peters, C. J., Healey, Callahan, Glass, Covello, Hull and
Santaniello, Js.

Argued May 4 and October 3—decision released December 19, 1989

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Michael Lefebvre,* law student intern, for the appellant (defendant).

*Steven M. Sellers,* assistant state's attorney, and *Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Alan Reisner,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a four count information with larceny in the second degree in violation of General Statutes § 53a-123 (a) (4),[1] conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-123 and 53a-48, general assistance fraud in violation of General Statutes § 17-282,[2] and conspiracy to commit general assist-

---

[1] General Statutes § 53a-123 (a) (4) provides: "LARCENY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less."

[2] "[General Statutes] Sec. 17-282. GENERAL ASSISTANCE FRAUD. PENALTY. FORFEITURE OF PRIVILEGES OF PARTICIPATION IN PROGRAM. TERMINATION UPON CONVICTION. READMISSION. (a) No vendor of goods or services sold to or performed for any beneficiary of assistance under this part shall, with intent to defraud, present for payment any false claim for goods or services performed, or accept payment for goods or services performed, which exceeds the amounts due for goods or services performed.

"(b) Any person or vendor who defrauds or assists in defrauding any town as to the support of its paupers, or deceives the selectmen thereof in obtaining support for any person not entitled to the same, or is found in violation of subsection (a) of this section, shall be subject to the penalties for larceny under sections 53a-122 to 53a-125b, inclusive, depending on the amount involved. In addition, any such person or vendor shall be subject to forfeiture of privileges of participation in the program provided under this part after a hearing held by the town according to procedures established by such town. Any person or vendor who is convicted of violating this section shall be terminated from participation in such program, effective upon conviction. No vendor so terminated shall be readmitted to such program for at least three years from the date of termination."

See footnote 6, infra.

ance fraud in violation of General Statutes §§ 17-282 and 53a-48. At the close of the state's case the trial court dismissed both counts of conspiracy. The defendant was thereafter convicted by a jury of larceny in the second degree and of general assistance fraud. The trial court sentenced the defendant to concurrent suspended sentences on both counts, placed her on probation on both counts and ordered as conditions of probation that the defendant make restitution of the sum of $877.90 and perform two hundred hours of community service.

The defendant, thereafter, appealed on several grounds to the Appellate Court; that court upheld the trial court's judgment. *State* v. *Golding,* 14 Conn. App. 272, 541 A.2d 509 (1988). The defendant then requested certification to this court. We granted certification[3] limited to the questions of whether the Appellate Court had erred in refusing to reverse the defendant's conviction of general assistance fraud because of the lack of an instruction by the trial court concerning the amount involved in the fraud and whether the Appellate Court had erred by refusing to review the defendant's claim that under the federal and state constitutions the amount involved in the fraud was an essential element of the offense and was therefore required to be charged by the trial court.[4] The claim

---

[3] The questions certified read as follows: "Where, in a prosecution for general assistance fraud (Section 17-282) the jury was never instructed concerning a finding of 'the amount involved,' did the Appellate Court err in refusing to reverse the defendant's conviction on the ground of the lack of such an instruction and did it err in refusing to review the defendant's claim that under the United States and Connecticut constitutions 'the amount involved,' is necessarily an essential element of the offense since it determines whether the offense is a misdemeanor or a crime as serious as a class B felony?"

[4] The defendant claimed that the lack of a jury instruction concerning the amount obtained by fraud deprived her of her right to a jury trial on all the essential elements of the crime charged under the sixth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution. The right to a trial by jury is a "fundamen-

of the lack of a jury instruction regarding the amount of the fraud was not raised at trial. The defendant therefore sought review in the Appellate Court and seeks review in this court under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).[5]

We initially heard arguments in this case in May, 1989. Thereafter, sua sponte, we requested further briefing and argument as to whether we should revise the standards set out in *State* v. *Evans,* supra, for appellate review of constitutional claims not distinctly raised at trial. We now reverse the Appellate Court on the merits and in this opinion adhere to *Evans.*

I

Prior to July 1, 1984, the maximum penalty for general assistance fraud was a fine of $1000, imprisonment for one year, or both. General Statutes (Rev. to 1983) § 17-282. The penalty in the statute bore no relation to the amount fraudulently obtained. Effective July 1, 1984, however, the statute was amended by No. 84-471 of the 1984 Public Acts, to subject a person convicted of general assistance fraud to the penalties for larceny under General Statutes §§ 53a-122 through 53a-125b. Those statutes grade the degree of the crime and the consequent severity of the penalties according to the amount obtained as a result of the defendant's illegal conduct. Those grades range from larceny in the first degree, a class B felony carrying a maximum possible penalty of twenty years imprisonment and a $10,000 fine, to larceny in the sixth degree, a class C mis-

tal" right protected from state action by the due process clause of the fourteenth amendment. *Duncan* v. *Louisiana,* 391 U.S. 145, 148–49, 88 S. Ct. 1444, 20 L. Ed. 2d 491, reh. denied, 392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412 (1968).

[5] Certification was not granted on any questions concerning the defendant's conviction of larceny in the second degree in violation of General Statutes § 53a-123 (a) (4).

demeanor carrying a maximum possible penalty of three months imprisonment and a fine of $250.[6]

The trial court in its charge, however, failed to inform the jury that it must find proven, beyond a reasonable doubt, the amount the defendant obtained by fraud. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The trial court further did not request the jury to make a specific finding as to that amount. Under the circumstances revealed by the evidence, however, the jury could have determined that the defendant obtained varied amounts depending upon the conduct of the defendant the jury found proven to have been fraudulent. The first question to be addressed, therefore, is whether the amount obtained by the defendant is an essential element of the crime of general assistance fraud.[7]

The overwhelming weight of authority is that the value of property stolen or obtained by fraud is an essential element of the crime when the value is used to differentiate between a felony and a misdemeanor or to determine the severity of the offense and the consequent punishment for a convicted offender. *State* v. *Scielzo,* 190 Conn. 191, 199–200, 460 A.2d 951 (1983); *State* v. *Baker,* 182 Conn. 52, 62, 437 A.2d 843 (1980); *Negron* v. *State,* 306 So. 2d 104, 108 (Fla. 1974); *People* v. *Stark,* 59 Ill. App. 3d 676, 681–82, 375 N.E.2d

[6] Although No. 84-471 of the 1984 Public Acts was not effective until July 1, 1984, and some of the defendant's fraudulent conduct occurred prior to that date, apparently the trial court and certainly the parties and the Appellate Court treated the defendant's sentence as having been imposed under the amended statute. See *State* v. *Allen,* 12 Conn. App. 403, 406, 530 A.2d 670, cert. denied, 205 Conn. 809, 532 A.2d 76 (1987).

[7] The Appellate Court applied its *Thurman* test for *Evans* review and under the second prerequisite of that test found that the amount obtained by fraud was not an essential element of the crime. It, therefore, concluded that the trial court's failure to charge the jury concerning it was not constitutional error reviewable under *Evans.* See *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

826 (1978); *State* v. *Dilworth,* 358 So. 2d 1254, 1256 (La. 1978); *State in Interest of Batiste,* 359 So. 2d 1077, 1078 (La. App. 1978); *People* v. *Johnson,* 133 Mich. App. 150, 153, 348 N.W.2d 716 (1984); *People* v. *Fuzi,* 46 Mich. App. 204, 209, 208 N.W.2d 47 (1973); *Sanders* v. *State,* 664 S.W.2d 705, 709 (Tex. Crim. App. 1982); *Standley* v. *State,* 517 S.W.2d 538, 541 (Tex. Crim. App. 1975); 50 Am. Jur. 2d, Larceny § 159. We conclude therefore that under the present statutory scheme embodied in § 17-282 for determining the degree of the offense and the severity of the permissible punishment the amount obtained by general assistance fraud is an essential element of that crime. Because the amount the defendant obtained by fraud is an essential element of the crime under the applicable statutory scheme, the trial court was obligated to instruct the jury concerning it. *State* v. *Williamson,* 206 Conn. 685, 708, 539 A.2d 561 (1988); *State* v. *Harman,* 198 Conn. 124, 133–34, 502 A.2d 381 (1985); *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982); *State* v. *Sumner,* 178 Conn. 163, 170, 422 A.2d 299 (1979). Failure to do so was constitutional error; *State* v. *Williamson,* supra; and requires reversal because the jury reached its decision without *any* instruction on, or consideration of, an essential element of the crime charged. *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); *State* v. *Harman,* supra, 134; *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982); *State* v. *Sunday,* 187 Mont. 292, 299–300, 609 P.2d 1188 (1980).

## II

Further, the Appellate Court erred by refusing to review the defendant's claim since she proffered a constitutional claim and the record was clearly adequate to review that claim. *State* v. *Hill,* 201 Conn. 505, 512–13, 523 A.2d 1252 (1986); *State* v. *Kurvin,* supra, 558. We have for many years held that claims not raised

in the trial court "can and will be considered" on appeal in two "exceptional circumstances." *State* v. *Evans,* supra, 70. One of those circumstances "may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right *and* a fair trial."[8] (Emphasis added.) Id.

The state urges us to revise the *Evans* standard of review for errors not preserved at trial because the words used by the standard though easily said lend themselves to inconsistent application. We have reviewed our own cases and those of the Appellate Court, and we agree with the state that they demonstrate disparate approaches to the *Evans* criteria. Upon reflection, we have decided neither to adopt a pure plain error standard for alleged constitutional violations, nor to attempt to reconcile past *Evans* decisions. Instead, we articulate guidelines designed to facilitate a less burdensome, more uniform application of the present *Evans* standard in future cases involving alleged constitutional violations that are raised for the first time on appeal.

Relying on the methodology of *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), we hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error;[9] (2) the claim is of constitutional magnitude alleging the violation of a fundamental right;

---

[8] The other exceptional circumstance is "where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal." *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). That circumstance is not at issue in this case.

[9] A review of our cases reveals that the words "adequately supports" in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), may be translated to read "is adequate to review." See, e.g., *State* v. *Mercer,* 208 Conn. 52, 57, 544 A.2d 611 (1988); *State* v. *Torrence,* 196 Conn. 430, 435, 493 A.2d 865 (1985).

(3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances.

The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim. *State* v. *Anderson,* 209 Conn. 622, 632–33, 553 A.2d 589 (1989); *State* v. *Wilson,* 199 Conn. 417, 438, 513 A.2d 620 (1986); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 675–76, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Thompson,* 197 Conn. 67, 76 n.7, 495 A.2d 1054 (1985); *State* v. *Conroy,* 194 Conn. 623, 627 n.5, 484 A.2d 448 (1984); *State* v. *Baker,* supra, 56–57; *State* v. *Evans,* supra, 70–71.[10]

The defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label. *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988); *State* v. *Douglas,* 203 Conn. 445, 455,

---

[10] An adequate factual record is especially crucial when dealing with a claim that was not preserved at trial, since consideration is being sought for review of a claim for which we lack a trial court ruling.

525 A.2d 101 (1987); *State* v. *Mullings,* 202 Conn. 1, 15, 519 A.2d 58 (1987); *State* v. *McIntosh,* 199 Conn. 155, 162, 506 A.2d 104 (1986); *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982). For example, once identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed. *State* v. *Smith,* 209 Conn. 423, 425–26, 551 A.2d 742 (1988); *State* v. *Mullings,* supra, 15; *State* v. *Tyler-Barcomb,* supra, 674; *State* v. *George,* 194 Conn. 361, 371–72, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985).

Finally, if we are persuaded that the merits of the defendant's claim should be addressed, we will review it and arrive at a conclusion as to whether the alleged constitutional violation clearly exists and whether it clearly deprived the defendant of a fair trial. *State* v. *Torrence,* 196 Conn. 430, 435, 493 A.2d 865 (1985); *State* v. *Evans,* supra, 71–73. In the present case, for example, it was clear constitutional error for the trial court to fail to instruct the jury concerning an essential element of the crime with which the defendant was charged, and the defendant was therefore clearly deprived of a fair trial.

In many cases of an alleged constitutional violation, however, the state is able to demonstrate the harmlessness of such alleged violation beyond a reasonable doubt. See *United States* v. *Hasting,* 461 U.S. 499, 507–509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983), on remand, 739 F.2d 1269 (7th Cir. 1984), cert. denied, 469 U.S. 1218, 105 S. Ct. 1199, 84 L. Ed. 2d 343 (1985); *Chapman* v. *California,* 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *State* v. *Morrill,* 197 Conn. 507, 539, 498 A.2d 76 (1985); *State* v. *Castonguay,* 194 Conn. 416, 434–35, 481 A.2d 56 (1984); *Williams* v. *Salamone,* 192 Conn. 116, 120, 470 A.2d

694 (1984); *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980); *Aillon* v. *State,* 168 Conn. 541, 547–48, 363 A.2d 49 (1975). Under such circumstances, it would be a waste of judicial resources, and a pedantic exercise, to delve deeply into the constitutional merits of a claim that can appropriately be resolved in accordance with the relevant harmless error analysis. For example, in a case where, on the whole record, there is overwhelming evidence of guilt and a constitutional claim is raised under *Evans* concerning the admission of inconsequential tangible evidence that was allegedly illegally seized, there is no reason that we cannot assume the constitutional violation and first address the fair trial issue and, if the alleged violation is harmless beyond a reasonable doubt, not engage in an in-depth discussion of the substantive constitutional claim.

Such an approach would be in keeping with the spirit of what the United States Supreme Court said in *United States* v. *Hasting,* supra, 509: "Since [*Chapman* v. *California,* supra,] the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations, see, e.g., [*Brown* v. *United States,* 411 U.S. 223, 230–32, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973)]; *Harrington* v. *California,* 395 U.S. 250, [89 S. Ct. 1726, 23 L. Ed. 2d 284] (1969); *Milton* v. *Wainwright,* 407 U.S. 371, [92 S. Ct. 2174, 33 L. Ed. 2d 1] (1972). The goal . . . is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.' "

The decision of the Appellate Court is reversed and a new trial is ordered for the count of the information charging the defendant with general assistance fraud in violation of § 17-282 only. The defendant's convic-

tion of larceny in the second degree in violation of § 53a-123 (a) (4) and the sentence and conditions imposed thereon remain in effect.

In this opinion PETERS, C. J., HEALEY, GLASS, HULL and SANTANIELLO, Js., concurred.

COVELLO, J., concurred in the result.